UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JONATHAN MENA,

                                        Plaintiff,                    9:24-CV-1145
                                                                       (AJB/DJS)
                        v.

THE STATE OF NEW YORK, et al.,

                                        Defendants.

_____

APPEARANCES:                                            OF COUNSEL:

JONATHAN MENA
Plaintiff, pro se
13-A-2620
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

ANTHONY J. BRINDISI
United States District Judge

**DECISION AND ORDER**

**I.    INTRODUCTION**

        On September 20, 2024, pro se plaintiff Jonathan Mena ("plaintiff") commenced this

action by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), with an

application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 9 ("IFP

Application").[1]  The complaint asserted claims related to plaintiff's confinement in the custody

of the New York State Department of Corrections and Community Supervision ("DOCCS").

*See generally* Compl.

_____

[1]  Plaintiff's first IFP Application (Dkt. No. 2) and second IFP Application (Dkt. No. 5) were denied as incomplete.
*See* Dkt. Nos. 4, 10.

By Decision and Order filed on December 5, 2024 (the "December 2024 Order"), the Court granted plaintiff's IFP Application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  Dkt. No. 10. On the basis of that review, the Court dismissed plaintiff's complaint for failure to state a claim.  *Id.*  In light of plaintiff's pro se status, the Court provided plaintiff with an opportunity to amend his complaint.  *Id.*

In January 2025, plaintiff filed an amended complaint with 156 pages of exhibits.  Dkt. No. 15.  In lieu of factual allegations, the plaintiff noted, "[p]lease see attached exhibits for all dates and times[.]"  *Id.*  In a Decision and Order filed on February 24, 2025 (the "February 2025 Order"), the Court accepted the pleading for filing but dismissed the amended complaint noting that the pleading lacked any factual allegations and failed to provide defendants with "a basis for a meaningful reply."  *Id.*  In light of plaintiff's pro se status, the Court afforded him a final opportunity to provide an amended complaint that complies with the Court's Orders.  *See id.*

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 19 ("Am Compl.").

## II.    SUFFICIENCY OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the December 2024 Order and will not be restated in this Decision and Order.  *See* Dkt. No. 10 at 2-4.

###   B.  Summary of Amended Complaint[2]

With the amended complaint, plaintiff asserts claims against the following defendants: State of New York, DOCCS, Superintendent Donald Uhler ("Uhler"), Captain Albert Gravlin ("Gravlin"), Captain W. Vesneske ("Vesneske"), Deputy Superintendent L. Stickney ("Stickney"), Sergeant Keleher ("Keleher"), Corrections Officer J. Perham ("Perham"), Grievance Supervisor Sherri Debyah ("Debyah"), Nurse Amber Lashway ("Lashway"), and Corrections Officer C. Cook ("Cook").  *See* Am. Compl. at 1-4.   The amended complaint contains allegations of wrongdoing at Upstate Correctional Facility ("Upstate C.F.").

From September 2021 until February 2022, plaintiff served an eight-month sentence in the Special Housing Unit ("SHU") at Upstate C.F.  Am. Compl. at 23.

On September 28, 2021, Keleher turned on the air conditioning system in Building #10, A2 Gallery.  Am. Compl. at 7.  Plaintiff, who was housed in Cell 47B, told Keleher that the air was "blowing" in his cell and that he suffered from severe arthritis.  *Id.*  Keleher "ignored" plaintiff and, as a result, the cold air exacerbated plaintiff's arthritis pain and he did not "get an ounce of sleep."  *Id.*

On September 29, 2021, plaintiff filed a grievance against Keleher related to the incident.  Am. Compl. at 7.  After the grievance was filed, Keleher "started to retaliate" against plaintiff.  *Id.*  On October 21, 2021, Keleher "stole" and discarded plaintiff's mail and disbursement forms.  *Id*. at 7, 29.  On three occasions in November 2021, when Keleher turned on the "A.C./cold air," the average outside temperature was between 35 and 40

---

[2]  With the amended complaint, plaintiff provided exhibits.  *See* Am. Compl. at 27-181.  To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

degrees. Am. Compl. at 7, 29, 32. As a result, plaintiff was forced to wear multiple pairs of socks, pants, a sweater, and winter hat. *Id.* at 32. On November 8, 2021, Keleher turned off the "wall jack" which was the only source of music for the inmates. *Id*. at 7, 30. During this time, plaintiff filed multiple grievances against Keleher. *Id*. at 27-33. In December 2021, Keleher attempted to discuss the grievances with plaintiff, but plaintiff refused. Am. Compl. at 33.

On October 29, 2021, Perham issued a false misbehavior report charging plaintiff with interference, refusing a direct order, and improper use of utensils. Am. Compl. at 21, 81, 84. As a result of the report, on the same day, Vesneske downgraded plaintiff from PIMS Level 3 to PIMS Level 1 and transferred plaintiff to another cell so that he could begin serving a mandatory 15-day loss of phone use. *Id*. at 12, 21. Plaintiff served the penalty. *Id*. at 21.

In October 2021 and November 2021, plaintiff wrote to Uhler complaining about the grievance procedures. Am. Compl. at 15, 95-96.

On November 16, 2021, Gravlin presided over a disciplinary hearing related to the misbehavior report. Am. Compl. at 11. The hearing was untimely as it commenced twelve days beyond the prescribed time period in violation of DOCCS' directives. *Id*. at 11, 12, 81-87. During the hearing, Gravlin removed plaintiff from the hearing due to plaintiff's objections and Perham provided false testimony. *Id*. at 21. Gravlin found plaintiff guilty of the charges in the misbehavior report and sentenced plaintiff to an additional ninety days in the SHU with four months loss of phone/tablet privileges. Am. Compl. at 11, 83. Plaintiff appealed the determination. *Id*. at 104.

On November 18, 2021, Vesneske deprived plaintiff of his telephone usage for a second 15-day period. Am. Compl. at 13, 84, 91-94.

In November 2021 and December 2021, Cook denied plaintiff's FOIL requests for copies of video surveillance and a PREA report.  Am. Compl. at 9, 73-80.

In December 2021, Lashway prescribed medication for plaintiff's complaints of constipation.  Am. Compl. at 19, 109, 111-114.  On December 13, 2021, plaintiff submitted a sick call request to Lashway explaining that the medication did not help and asked for a different medication.  *Id*.  Lashway ignored the request, and three subsequent sick call requests.  *Id*.  As a result, plaintiff suffered bleeding in his rectum and hemorrhoids.  *Id*.

On December 22, 2021, Gravlin's disciplinary determination was reversed.  Am. Compl. at 11.  However, plaintiff had already served fifty of the ninety-day sentence and served the "phone usage sanction" on two separate occasions.  *Id*. at 11-12.

On December 29, 2021, plaintiff submitted sick call requests for a "renewal" of his arthritis medication.  Am. Compl. at 19, 109, 111-114.  Lashway "complied" with the request, but the medication was not delivered until four days later.  *Id*.

On December 29, 2021, Keleher ordered an "illegal search" of plaintiff's living quarters. Am. Compl. at 7, 34-35.

On December 23, 2021 and January 3, 2022, January 4, 2022, January 9, 2022, and January 20, 2022, plaintiff filed grievances against Uhler related to Uhler's failure to investigate or respond to plaintiff's grievances and accused Uhler of misconduct and participating in a conspiracy.  Am. Compl. at 97, 99-103.

On January 3, 2022, Stickney denied plaintiff a 25% reduction of his time in the SHU. Am. Compl. at 17, 106-108.  Instead, Stickney awarded plaintiff a "42 day discount of time." *Id*.

On January 7, 2022, between 10:00 p.m. and 1:00 a.m., "under the full knowledge and/or approval" of Uhler, Perham moved plaintiff to a cell without a functioning sink, toilet, or hot water.  Am. Compl. at 15, 21, 105.  As a result, plaintiff missed ten showers.  *Id*.  Plaintiff complained to Perham about the conditions of his cell.  *Id.* at 21.

On January 30, 2022, Stickney packed plaintiff's property in anticipation of moving plaintiff to another facility the next day.  Am. Compl. at 16-17.  However, Uhler and Stickney "ordered" plaintiff to remain in the cell for seven days without his property, unable to shower, and forced to walk around his cell without shoes or socks.  *Id.*  On February 7, 2022, plaintiff was transferred to Clinton Correctional Facility.  *Id.*

During his confinement at Upstate C.F., Debyah returned plaintiff's timely filed grievances, claimed she never received grievances, failed to conduct investigations and hearings related to grievances, and intentionally misdated grievances.  Am. Compl. at 8, 37-61, 176.  Debyah also refused to provide plaintiff with appeal forms and harassed plaintiff.  *Id*. at 38-55.

Construing the amended complaint liberally[3], plaintiff alleges the following: (1) Eighth Amendment claims related to plaintiff's conditions of confinement and deliberate medical indifference; (2) Fourteenth Amendment due process claims; (3) constitutional claims related to FOIL requests; (4) First Amendment retaliation claims; (5) First Amendment claims related

---

[3]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests.  *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

to the grievance process; (6) conspiracy claims; and (7) Fourth Amendment claims.  *See generally* Am. Compl.  Plaintiff seeks monetary damages.  *See id*. at 7, 25.

### C.  Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials.  *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability.").  "[A] plaintiff must plead and prove 'that each Government-official

defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id*. (quoting *Iqbal*, 556 U.S. at 676).

### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890);  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997);  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977);  *Dawkins v. State of New York,* No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, DOCCS, and the State of New York, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is

considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *see Sanchez v. City of New York*, 736 Fed. App'x 288, 290 (2d Cir. 2018) (dismissing claims against DOCCS based upon sovereign immunity); *see also LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002).

### 2. Rule 10

The amended complaint contains allegations related to individuals who are not identified in the caption, or list of parties, as defendants.  Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim.  *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15,

2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

### 3. Eighth Amendment

#### a. Conditions of Confinement

While the United States Constitution " 'does not mandate comfortable prisons,' . . . neither does it permit inhumane" treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468,480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted). "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly,* 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

#### i. Keleher

Plaintiff claims Keleher exposed inmates in the SHU to cold air on four occasions in September 2021 and November 2021 and deprived inmates of music for seven days. *See* Am. Compl. at 7.

Although "[a]n Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold," *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001), in this action, the temporary exposure to cold air does not satisfy the objective prong of an Eighth Amendment claim. *See Smith v. Annucci*, No. 9:17-CV-00558 (AMN/TWD), 2023 WL 3168896, at *5 (N.D.N.Y. May 1, 2023) (holding that exposure to cold air and air conditioned rooms for four days does not rise to the level of a constitutional violation), *aff'd sub nom. Smith v. New York State*, No. 23-6601-CV, 2024 WL 4746554 (2d Cir. Nov. 12, 2024). Moreover, "[i]t is well established, [ ], that prison inmates enjoy no constitutional right to watch television or to listen to the radio, as those amenities are not considered to be necessities for prison inmates." *Abreu v. Lake*, No. 9:17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *14 (N.D.N.Y. Jan. 22, 2018), *on reconsideration in part sub nom. Abreu v. Donahue*, 2018 WL 11236521 (N.D.N.Y. Mar. 13, 2018).

Accordingly, plaintiff's Eighth Amendment claims against Keleher related to his conditions of confinement in the SHU are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Mena v. City of New York*, No. 12 CIV. 0028, 2014 WL 2968513, at *9 (S.D.N.Y. June 27, 2014) (dismissing conditions-of-confinement claims based upon arthritis and brief exposure to cold temperatures).

### ii. January 7, 2022 Cell Confinement

Plaintiff asserts Eighth Amendment claims against Uhler and Perham related to plaintiff's confinement in a cell without a functioning sink, toilet, or hot water. Am. Compl. at 15, 21, 105. While plaintiff does not indicate how long he was confined in the cell, he alleges he missed ten showers. *Id*.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment claims against Uhler and Perham survive initial review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.  *See Carr v. Canty*, 2012 WL 3578742 at *3 (S.D.N.Y. Aug. 16, 2012) (citing *Howard v. Wheaton*, 668 F.Supp. 1140, 1143 (N.D. Ill. 1987) (allowing the plaintiff to proceed with Eighth Amendment claim that he was deprived of a functioning toilet and hot water for 13 days)).

### iii.  January 30, 2022 Cell Confinement

Plaintiff claims that Stickney and Uhler confined him to a cell for seven days without his property, the ability to shower, and without shoes or socks.  Am. Compl. at 16-17.  These conditions, even considered collectively, do not state a claim for relief.  *See Johnson v. Colvin,* No. 09-CV-6413, 2013 WL 775357, at *4 (W.D.N.Y. Feb. 28, 2013) (finding that the temporary deprivation of showers for periods of approximately two weeks, does not satisfy the objective component of a claim of cruel and unusual punishment); *see also Boyd v. Doe #1*, No. 9:18-CV-1333 (TJM/ATB), 2019 WL 1771501, at *7 (N.D.N.Y. Apr. 23, 2019) (depriving an inmate of unidentified personal property does not constitute a per se deprivation of a basic human need); *see also Lomholt v. Holde*r, 287 F.3d 683, 684 (8th Cir. 2002) (dismissing Eighth Amendment claim based upon being forced to walk barefoot).

Accordingly, plaintiff's Eighth Amendment claims, on this ground, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Deliberate Medical Indifference

The Eighth Amendment mandates that prison officials provide adequate medical care to inmates. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of deliberate indifference to a prisoner's serious medical needs." *Id*. (internal quotation marks omitted). A deliberate medical indifference claim has objective and subjective components. *Id*. "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). As to the subjective element, an official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety. *See Hill*, 657 F.3d at 122 (citing *Farmer*, 511 U.S. at 837).

Here, plaintiff asserts Eighth Amendment claims against Lashway related to medical care for constipation, hemorrhoids, and rectal bleeding. Even considered together, these conditions do not constitute "serious" medical conditions sufficient to establish the objective component of an Eighth Amendment medical care claim. *See Adams v. Rock*, No. 9:12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *8 (N.D.N.Y. Mar. 24, 2015) (citing, *inter alia, Black v. Fischer*, No. 9:08–CV–232 (FJS/DEP), 2010 WL 2985081, at *10 (N.D.N.Y. July 1, 2010) (holding that constipation and hemorrhoids with discomfort and minor bleeding, without more, are not sufficiently serious to establish an Eighth Amendment claim)).

Plaintiff also attempts to assert Eighth Amendment claims related to the four-day delay in receiving his arthritis medication. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical

13

treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citation and internal quotation marks omitted).  Plaintiff does not allege that the four-day interruption in treatment exacerbated his condition or injuries or subjected him to an increased risk of harm.  *See Henrius v. Cnty. of Nassau*, No. 13-CV-1192, 2015 WL 5542464, at *16 (E.D.N.Y. Sept. 16, 2015) (holding that "the lapses in treatment were minor and inconsequential and, thus, insufficient to satisfy the objective prong of a Section 1983 deliberate indifference to medical needs claim").  Here, plaintiff alleges an interruption in treatment without any "tangible injury" which, without more, does not suggest that Lashway was deliberately indifferent to plaintiff's serious medical needs.  *See Chimney v. Quiros*, No. 3:21-CV-00321, 2021 WL 5281608, at *8 (D. Conn. Nov. 12, 2021) ("Courts have held that denial of a single dose, or even several doses, of a needed medication is insufficient, without more, to establish a serious delay in treatment under the Eighth Amendment."); *see also Dean v. Conley*, 20 Fed. App'x 294, 296 (6th Cir. 2001) (affirming dismissal of Eighth Amendment claim based upon the defendant's decision to delay the plaintiff's request for prescription medication for four days).

For these reasons, plaintiff's Eighth Amendment deliberate medical indifference claims against Lashway are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Fourteenth Amendment – Due Process

Construing the complaint liberally, plaintiff claims that Perham, Gravlin, Vesneske, and Stickney violated his Fourteenth Amendment rights.

14

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  S*ee Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.  To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement.  *See Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz,* 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.' ") (quoting *Sandin*, 515 U.S. at 484).

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin (see Colon,* 215 F.3d at 232 n.5), the Second Circuit generally takes the position that disciplinary confinement, without unusual

15

conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz,* 380 F.3d at 654; *Colon,* 215 F.3d at 231.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, *inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

### a. Perham

Courts have held that false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated. *Mitchell v. Senkowski,* 158 Fed. App'x 346, 349 (2d Cir. 2005). "Rather, such action violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him." *Id.*

Here, plaintiff claims Perham testified falsely at the disciplinary hearing however, Perham did not preside over the disciplinary hearing. Accordingly, the Court finds that plaintiff has failed to state a claim for violation of his due process rights against Perham.

### b. Gravlin

As noted *supra*, to state a viable due process claim, plaintiff must first plead that he was deprived of a liberty interest. "Where the length of confinement imposed is different from

the time actually served, the duration of the confinement actually served is the appropriate time period to be analyzed for purposes of determining whether plaintiff had a liberty interest that triggered due process protections." *Pilgrim v. Dixon*, No. 10 CV 795, 2011 WL 4024794, at *3 (W.D.N.Y. Sept. 9, 2011) (citations omitted). In this regard, while Gravlin sentenced plaintiff to ninety-days in the SHU, plaintiff served only fifty of the ninety days.

In this regard, courts have routinely found similar lengths of disciplinary confinement insufficient to constitute a liberty interest. *See Clark v. Gardne*r, No. 9:17-CV-0366 (DNH/TWD), 2021 WL 1200328, at *21 (N.D.N.Y. Mar. 8, 2021) (holding that 46 days in disciplinary confinement did not implicate a liberty interest) (collecting cases), *report and recommendation adopted*, 2021 WL 1198199 (N.D.N.Y. Mar. 30, 2021). In these cases, where the duration of confinement alone does not constitute an atypical or significant hardship, courts must turn to the conditions of the confinement. *See Palmer v. Richards*, 364 F.3d 60, 66 (2d Cir. 2004); *see also Davis*, 576 F.3d at 133. Here, the complaint does not include any allegations related to the conditions of plaintiff's 50-day confinement in the SHU.

"[G]iven the absence of any allegations from [p]laintiff about unusually harsh or abnormal conditions of his confinement [ ], the Court finds [p]laintiff's liberty interests were not implicated by the disciplinary hearing[] challenged in this action. *See Clark*, 2021 WL 1200328, at *21; *see also Mena v. City of New York,* No. 13-CV-2430, 2014 WL 4652570, at *8 (S.D.N.Y. Sept. 18, 2014) (holding that Mena failed to allege that the fifty-one-day SHU sentence imposed on him was, under the circumstances, any more serious than the "normal" conditions of solitary confinement addressed).

Accordingly, plaintiff's due process claims against Gravlin are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.[4]

### c. Vesneske

Plaintiff attempts to assert a due process claim against Vesneske based upon his decision to impose a 15-day loss of telephone privilege on two separate occasions. However, this claim fails for three reasons.  First, Vesneske's penalty, in totality, was a thirty-day loss of telephone privileges.  This penalty, without more, does not give rise to a protected liberty interest.  *See Funches v. Rockwood,* No. 9:20-CV-0676 (MAD/CFH), 2020 WL 14020106, at *17 (N.D.N.Y. Aug. 14, 2020) (holding that forty days loss of telephone and recreation does not give rise to a liberty interest) (citing *Smart v. Goord,* 441 F.Supp.2d 631, 640 (S.D.N.Y. 2006) ("[T]he loss of phones, packages, and commissary privileges does not give rise to a protected liberty interest under New York law.")).

Second, a Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); s*ee also Sanders v. Gifford*, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS directive does not give rise to a § 1983 claim).  Accordingly, to the extent

---

[4] Because plaintiff's due process claims against Gravlin are insufficiently plead, to the extent that the complaint could be read to include supervisory claims against Uhler related to Gravlin's disciplinary determination, those claims are also dismissed.  *See Fransua v. Vadlamudi,* No. 05-1715, 2008 WL 4810066, at *1 (2d Cir. Nov. 3, 2008).

that plaintiff argues that Vesneske violated his due process rights because he failed to

comply with DOCCS Directives related to the loss of telephone privileges, the claim is

dismissed.

Finally, to the extent that plaintiff attempts to plead a Section 1983 claim against

Vesneske based upon "double jeopardy," *see* Am. Compl. at 93, that claim is dismissed.

"[F]acing a hearing on a prison disciplinary charge cannot be construed as being 'put in

jeopardy of life or limb' for purposes of the Double Jeopardy Clause of the Fifth Amendment."

*Zimmerman v. Burge*, No. 06 CV 0176 (GLS/GHL), 2008 WL 850677, at *10 (N.D.N.Y. Mar.

28, 2008) (citing U.S. Const. amend V).  According, "[n]o independent Fifth Amendment claim

exists with respect to due process violations allegedly occurring at a prison disciplinary

proceeding."  *Rivera v. Selsky,* No. 9:05-CV-0967 (TJM/GHL), 2007 WL 956998, at *10

(N.D.N.Y. Jan. 5, 2007) ("), *report and recommendation adopted as modified,* 2007 WL

956948 (N.D.N.Y. Mar. 29, 2007).

Consequently, the Fourteenth Amendment due process claims against Vesneske are

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state

a claim upon which relief may be granted pursuant to Section 1983.[5]

### d.  Stickney

Construing the amended complaint liberally, plaintiff alleges that Stickney violated his

right to due process when he refused to implement the "time cut protocol" and reduce

plaintiff's SHU sentence.  *See* Am. Compl. at 17.  Because plaintiff failed to plead that his

fifty-day confinement in the SHU deprived him of a constitutionally protected liberty interest,

---

[5]  Because plaintiff's due process claims are insufficiently plead, to the extent that the complaint could be read to include supervisory claims against Uhler related to the disciplinary determination, those claims are also dismissed.  *See Fransua v. Vadlamudi,* No. 05-1715, 2008 WL 4810066, at *1 (2d Cir. Nov. 3, 2008).

his claim against Stickney related to a "time cut" fails to state a claim.  *See Barnes v. Starks,* No. 95 CIV. 4891, 1996 WL 648956, at *5 (S.D.N.Y. Nov. 6, 1996).

### 5.  Constitutional Claim Related to FOIL Requests

To the extent that plaintiff attempts to assert a constitutional claim against Cook for failing to properly process his FOIL requests, that claim is dismissed.  "Courts in this District have repeatedly recognized that a section 1983 action is not the proper vehicle for bringing a FOIL claim."  *Hall v. Benniger*, No. 19-CV-85 (LEK/DJS), 2019 WL 2477994, at *2 (N.D.N.Y. Mar. 4, 2019) (internal quotation marks omitted), report and recommendation adopted, 2019 WL 1760050 (N.D.N.Y. Apr. 22, 2019).  "Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78."  *Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013), *aff'd sub nom. Posr v. Ueberbacher*, 569 Fed. App'x 32 (2d Cir. 2014).  Accordingly, plaintiff's FOIL claim against Cook is dismissed.  *See Butler v. Geico Gen. Ins. Co.*, No. 18-CV-1493 (GLS/DJS), 2019 WL 330591, at *3 (N.D.N.Y. Jan. 25, 2019) ("[W]here the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate.") *report and recommendation adopted*, 2019 WL 652197 (N.D.N.Y. Feb. 15, 2019).

### 6.  First Amendment – Retaliation

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' "  *Gill v. Pidlypchak*, 389

F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A*., 534 U.S. 506 (2002)).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

The filing of grievances is protected speech.  *See Davis v. Goord*, 320 F.3d 346, 352-353 (2d Cir. 2003).  The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (cleaned up) (emphasis in original). The "objective test applies even where a particular plaintiff was not himself subjectively deterred" from exercising his rights.  *Id.*  "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001).  While there is no "bright line . . . defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection.  *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co*., 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).

Construing the amended complaint liberally, plaintiff asserts the following retaliation claims:

● Keleher caused cold air to blow in plaintiff's cell, performed an illegal search of plaintiff's cell, stole disbursement forms, and deprived plaintiff of music in retaliation for grievances plaintiff filed against Keleher;

● Cook failed to process plaintiff's FOIL requests as "payback" or "retaliation" for plaintiff's complaints against Cook's "co-workers;"

● Vesneske forced plaintiff to serve the same penalty twice in retaliation for plaintiff's grievances against Keleher;

● Stickney denied plaintiff's request for an "advance" that would allow plaintiff to make copies of legal document and "the mandated 25% time reduction at the SHU program" in retaliation for grievances against "co-workers;" and

● Uhler, Stickney, and Perham retaliated against plaintiff for grievances plaintiff filed against Uhler and confined plaintiff to a cell without an operating sink, toilet, or hot water.

*See* Am. Compl. at 7, 17, 19, 21, 76, 91, 105.

Upon review and with due regard for plaintiff's status as a pro se litigant, the Court finds that plaintiff's First Amendment retaliation claims against Keleher and Uhler survive initial review and requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the remaining retaliation claims. Even assuming plaintiff engaged in protected conduct when he filed grievances, plaintiff has failed to allege a causal relationship between any protected conduct and the alleged adverse action taken by Cook, Vesneske, Stickney, and Perham. Plaintiff vaguely claims that these defendants were motivated to retaliate because plaintiff grieved "co-workers." However, "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden,* 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F.Supp.2d 353, 369

(S.D.N.Y. 2011) (collecting cases).  Here, plaintiff has not specified what grievances motivated the alleged retaliatory actions, when the grievances were filed, who the grievances were filed against, or how defendants became aware of the grievances.  Without more, the Court cannot infer that defendants were motivated to retaliate against plaintiff.  *See Davidson v. Talbot,* No. 01-CV-473 (RFT), 2005 WL 928620, at *16 (N.D.N.Y. March 31, 2005) (finding that the plaintiff's allegation that he was attacked for filing grievances failed to allege when the grievances were filed and thus, "th[e] Court had no way of assessing the strength or validity of such claim."); *see Guillory v. Haywood,* No. 13-CV-1564 (MAD/TWD), 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred); *Edwards v. Bezio*, No. 9:08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct").

Further, the Court notes that while plaintiff filed grievances against these defendants, those grievances were filed after the alleged adverse actions occurred and therefore, cannot be the basis for a retaliation claim.  *See Williams v. Smith*, No. 9:11-CV-0601 (LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) ("Adverse actions that predate protected conduct cannot form the basis of a retaliation claim.").

Accordingly, plaintiff's retaliation claims against these defendants are dismissed.

### 7.  First Amendment – Grievance Process

23

Inmates do not have a constitutional right to state grievance programs.  *See Shell v. Brzeniak*, 365 F.Supp.2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim.").

Moreover, inmates do not have a due process right to an investigation requested through a grievance.  *See DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally,* No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Torres v. Mazzurca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Inmates do not have a due process right to a thorough investigation of grievances).

Accordingly, plaintiff's First Amendment claims related to the processing of his grievances and complaints are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Conspiracy

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal causing damages. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  "To state a claim

24

against a private entity on a section 1983 conspiracy theory the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act."  *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello,* 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief).

To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds."  *See Webb v. Goord,* 340 F.3d 105, 110-11 (2d Cir. 2003).  Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Warren v. Fischl*, 33 F.Supp.2d 171, 177 (E.D.N.Y. 1999) (citations omitted); *see Ashcroft*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory).

Here, plaintiff does not assert facts giving rise to a conspiracy to deprive plaintiff's constitutional rights.  There are no facts upon which it may be plausibly inferred that defendants came to an agreement, or a "meeting of the minds," to violate plaintiff's constitutional rights.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding

allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).  Indeed, aside from referencing conspiracy claims, the amended complaint does not contain a single allegation regarding a conspiratorial act.

Accordingly, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 9.  Fourth Amendment

Construing the amended complaint liberally, plaintiff claims that Keleher violated his constitutional rights when he illegally searched plaintiff's cell.  The Fourth Amendment protects an individual's right "to be secure in [his or her] persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  Searches and seizures may be conducted if there exists probable cause to believe that a crime has been committed and that evidence of that crime is present on the person or premises to be searched.  However, the Fourth Amendment is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *Demaio v. Mann*, 877 F.Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights.") (citations omitted).

Consequently, plaintiff's Fourth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**III.    CONCLUSION**

**WHEREFORE, it is hereby**

**ORDERED** that the amended complaint (Dkt. No. 19) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted: (1) Section 1983 claims for monetary damages against defendants in their official capacity, DOCCS, and the State of New York; (2) Eighth Amendment claims related to plaintiff's conditions of confinement against Keleher and Uhler and Stickney (related to cell confinement on January 30, 2022), (3) Eighth Amendment deliberate medical indifference; (4) Fourteenth Amendment due process claims; (5) claims related to FOIL requests; (6) First Amendment retaliation claims against Cook, Vesneske, Stickney, and Perham; (7) First Amendment claims related to the grievance process; (8) conspiracy claims; and (9) Fourth Amendment claims;[6] and it is further

---

[6] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

**ORDERED** that the following claims survive review and require a response:  (1) Eighth Amendment conditions-of-confinement claims against Uhler and Perham related to plaintiff's cell confinement on January 7, 2022; and (2) First Amendment retaliation claims against Keleher and Uhler; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summons and amended complaint to the Office of the Attorney General, together with a copy of this Decision and Order, by electronic mail only; and it is further

**ORDERED** that a response to the amended complaint be filed by the defendants, or counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; the failure to do so will result in the dismissal of his action;** and it is further

      **ORDERED** that the Clerk of the Court shall terminate the following defendants from the Docket Report: The State of New York, DOCCS, Gravlin, Vesneske, Stickney, Debyah, Lashway, and Cook; and it is further

      **ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

Dated: June 10, 2025

Anthony J. Brindisi
U.S. District Judge